FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, INC.; et al., <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> DAVID MAXWELL-JOLLY, Director of Department of Health Care Services of the State of California, <br><br> Defendant - Appellant. | No. 09-55692 <br><br> D.C. No. 2:09-cv-00382-CAS-MAN <br><br> MEMORANDUM [*] |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted January 19, 2010
Pasadena, California

Before: REINHARDT, W. FLETCHER and M. SMITH, Circuit Judges.

Plaintiffs-Appellees Independent Living Center of Southern California, Inc.,

et al. sought a preliminary injunction in the district court to enjoin AB 1183's five

percent Medi-Cal reimbursement rate reduction as to providers of pharmacy

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

services.  As the facts and procedural history are familiar to the parties, we do not recite them here except as necessary to explain our decision.  We affirm the district court's grant of the preliminary injunction.

For the reasons discussed in *Cal. Pharms. Ass'n v. Maxwell-Jolly*, No. 09-55532, slip op. at 3331-3361 (9th Cir. Mar. 3, 2010) (*California Pharmacists II*), we reject the Director's contention that the State legislature was not required to study the impact of the five percent rate reduction on the statutory factors of efficiency, economy, quality, and access to care, prior to enacting AB 1183.

The primary issue in this appeal is whether the legislature actually conducted the requisite analysis prior to enacting AB 1183.  At oral argument, the Director called our attention to a December 2007 Survey of Dispensing and Acquisition Costs of Pharmaceuticals in the State of California, which was prepared for the Department by the accounting firm Myers and Stauffer LC (the Myers and Stauffer Study).  The Director referenced the Myers and Stauffer Study in its briefing before the district court, but only to support the argument that the *Department* had sufficiently considered the § 30(A) factors prior to *implementing* the five percent rate reduction.  However, for the reasons we explained in *California Pharmacists II*, slip op. at 3349-3355, any analysis performed by the *Department* was

2

inadequate because the Department did not retain the discretion not to implement the rate reductions based on a § 30(A) analysis.

On appeal, the Director argues that the *legislature* also considered the Myers and Stauffer Study, because it appears in the "Comments" column of the May 30, 2008 agenda released by the Assembly Budget Subcommitee No. 1 on Health and Human Services. That comment reads: "Dec. 2007 Myers and Stauffer study found that current Medi-Cal drug pricing averages around 5 percent over cost." The Director did not argue in his briefing, either here or in the district court, that the citation to the Myers and Stauffer Study in the May 2008 agenda satisfied § 30(A)'s requirements. However, the Director presented the agenda to the district court as part of AB 1183's legislative history, and the district court held that the legislative history shows no indication that the § 30(A) factors were considered. We have held that the district court's finding on that issue was not clearly erroneous. *See California Pharmacists II*, slip op. at 3349.

In any event, for two additional reasons, we reject the Director's reliance on the Myers and Stauffer Study to satisfy the requirement that the *legislature* "stud[ied] the impact of the contemplated rate change(s) on the statutory factors prior to setting rates, or in a manner that allow[ed] those studies to have a meaningful impact on rates before they [were] finalized." *California Pharmacists*

3

*II*, slip op. at 3360-61 (emphasis omitted).  First, the one-sentence citation to the May 30, 2008 agenda does not show adequate consideration of the § 30(A) factors. Second, while the Myers and Stauffer Study provides a detailed discussion of costs, it is bereft of any analysis of the remaining § 30(A) factors—efficiency, economy, quality, and access to care.  *See California Pharmacists II*, slip op. at 3360 (holding that the State must consider costs *and* study the impact of the rate change on the statutory factors).  Indeed, the Myers and Stauffer Study notes several times that it is only a cost study, and recommends that the Department conduct additional analysis in light of those costs.  *See, e.g.*, Myers and Stauffer Study at 79 ("There are several factors that should be considered in determining an appropriate pharmacy reimbursement formula for Medi-Cal.  These factors include dispensing costs . . . , drug acquisition costs and market dynamics . . . balanced with the need to maintain sufficient access to services for Medi-Cal recipients throughout the state."); *id.* ("Myers and Stauffer recommends that the Department of Health Services evaluate its pharmacy participation level as well as any additional data sources available for tracking complaints about recipient access to services."); *id.* at 81 ("The cost survey performed by Myers and Stauffer reports aggregate historical costs of dispensing as observed in the current provider community but does not determine if the costs observed are reflective of providers

4

operating in the most efficient manner possible."); *id.* ("An evaluation of the dispensing fee should also consider issues of access to services, reimbursement rates prevalent in the marketplace from other third party payers and payment rates that promote incentives for provider efficiency."). Accordingly, we affirm the district court's holding concerning Plaintiffs' likelihood of success on the merits because the State did not study the impact of the five percent rate reduction on the statutory factors prior to enacting AB 1183, or in a manner that allowed those studies to have a meaningful impact on rates before they were finalized. *See California Pharmacists II*, slip op. at 3360-61.

Nor did the district court abuse its discretion in finding that Plaintiffs demonstrated irreparable harm. After considering both parties' evidence, the district court concluded that the Director failed to refute Plaintiffs' showing of irreparable harm. The district court concluded that even if, on average, pharmacies would be compensated above their acquisition costs, the Director had not refuted Plaintiffs' showing that many brand and generic drugs would be reimbursed at a level below cost, limiting Medi-Cal patients' access to those drugs. The district court noted that because many single-source drugs are protected from competition by patents, there are no available generic alternatives. The court also concluded that if pharmacies are forced to curtail services or go out of business, existing

5

customers would not have access to other pharmacies, especially since home-delivery services would end. It further noted that independent pharmacies represent thirty-three percent of the licensed community pharmacies in California and that they would be severely impacted by the reductions.

Contrary to the Director's argument, the district court did not disregard the Director's evidence, and the Director cannot rely solely on asking this court to re-weigh the evidence presented to the district court. *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 658 (9th Cir. 2009). The district court's conclusion that Plaintiffs would suffer irreparable harm was not clear error.

The district court also did not abuse its discretion in determining that the balance of hardships tipped decidedly in Plaintiffs' favor. *See California Pharmacists II*, slip op. at 3360.

For these reasons and those we provided in *California Pharmacists II*, slip op. at 3331-61, we affirm the district court's grant of a preliminary injunction.

**AFFIRMED.**